IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE ACTOS (PIOGLITAZONE-<br>PRODUCTS LIABILITY LITIGATION) | MDL No. 6:11-md-2299 |
| This Document Applies To: | JUDGE DOHERTY |
| *ALL CASES* | MAGISTRATE JUDGE HANNA |

### SPECIAL MASTERS' REPORT AND RECOMMENDATION: DISCOVERY CONCERNING SALES PERSONNEL

A discovery dispute has arisen in "Allen v. Takeda Pharmaceuticals International, Inc.," Civil Action No. 12-0064, which is set for trial on January 27, 2014. Specifically, the Plaintiffs' Steering Committee ("PSC," operating on behalf of the plaintiffs in the instant action) seeks to conduct discovery concerning 43 members[1] of the sales forces of Takeda[2] and Lilly[3] (collectively, "Defendants").[4] The Defendants object to the scope of the PSC's request as overly broad and unduly burdensome. Following is our report on the dispute and our recommendation for its resolution.[5]

---

[1] The PSC's original request listed 44 individuals (and all argument has been presented in terms of that number of individuals). However, the Defendants have informed the PSC and the Court that one of the listed individuals – Jennifer Siwiec – does not have a custodial file. There will be no further discussion of Ms. Siwiec's file in this Report and Recommendation, as the undersigned assume that either there is no longer any dispute about her file or, alternatively, that any dispute arising out of the fact that she has no file will be addressed by the Court elsewhere.

[2] "Takeda" refers to all of the named Takeda family of defendants collectively: Takeda Pharmaceuticals International, Inc., Takeda Pharmaceuticals U.S.A., Inc. (f/k/a Takeda Pharmaceuticals North America Inc.,), Takeda Pharmaceutical Company Limited, Takeda Development Center Americas, Inc. (f/k/a Takeda Global Research & Development Center, Inc.), and Takeda California, Inc. (f/k/a Takeda San Diego, Inc.).

[3] "Lilly" refers to Eli Lilly and Company.

[4] For present purposes, we do not identify which individuals were employed by Takeda and which by Lilly, because the dispute does not turn on those specifics.

[5] The documents setting forth the parties' positions are attached, and identified for the Court's ease of reference, as follows:

## REPORT

In this product liability litigation brought by Terrence Allen (who claims that he is a diabetes patient who consumed Actos®, which allegedly caused him to develop bladder cancer) and Susan Allen (Terrence Allen's wife)[6] (collectively, "the Plaintiffs"), the current dispute concerns discovery directed toward the role and actions of the Defendants' sales personnel. There is no dispute that such discovery is relevant in these proceedings and falls within the scope of permissible discovery as defined within Fed. R. Civ. Pro. 26(b). However, the Defendants assert the need to reduce the number of sales personnel whose files are to be produced because producing the files of 43 additional custodians at this point in the litigation is overly broad and unduly burdensome.

### I. *Facts and Relevant Procedural History*

Discovery concerning the Defendants' sales personnel[7] began several months ago, when the parties agreed to the production of a specific number of custodial files of individuals.[8] At the time that agreements were reached with regard to this earlier discovery, the parties agreed that the issue of discovery concerning sales representatives would be reopened once the two pilot bellwether cases had been identified. On July 15, 2013, the parties made their nominations for

---

- *Exhibit A*: Email sequence beginning July 29, 2013 (from Jonathan Sedgh) and ending July 30, 2013 (from Sherry Knutson);

- *Exhibit B*: PSC's Submission Regarding Outstanding Sales Force Files; and

- *Exhibit C*: Defendants' Submission Regarding Sales Personnel Discovery.

[6] Rec. Doc. 160 (all record references are to the Docket Report for "Allen v. Takeda," Civil Action No. 12-0064).

[7] The specific requests currently at issue involve a request for the production of documents; however, it is expected that the PSC will seek to conduct deposition discovery on these issues.

[8] The majority (if not all) of this earlier discovery was conducted after the bellwether nominee pools were created by both parties and after the Defendants' Fact Sheets (which identified all relevant sales personnel) were produced by Takeda, but before the parties nominated two cases for the Pilot Bellwether Trials.

{L0257872.8}  2

the pilot bellwether program trials; the Court accepted those nominations by Order dated July 26, 2013.

On July 29, 2013, the PSC requested the custodial files of 43 individuals who are (or were) members of the sales forces of Takeda and Lilly. The Plaintiffs' request addresses four categories of the Defendants' current and/or former employees:

- 12 sales representatives ("sales reps") who had direct contact with prescribing physicians;[9]

- 14 district managers ("Managers") of the sales reps;[10]

- 14 regional sales directors ("Directors"), whom we understand supervised the Managers;[11] and

- Three senior sales representatives ("senior sales reps") who are sought in their capacity as fact witnesses (the PSC has evidence suggesting that they discussed the risk of side effects, including bladder cancer and cardiovascular issues, with one or more sales reps).[12]

In response, the Defendants object that the requests are overly broad and unduly burdensome in light of the tens of millions of pages that they have produced to the PSC thus far, the impending discovery deadline, and the fact that trial is to begin in approximately six (6) months.

These issues were discussed at length during weekly conference calls among the Special Masters and counsel for both sides conducted on August 1, 2013, August 8, 2013, and August

---

[9] The sales reps are: Jenna Palka; Paul Schlicht; Marti Precurato-Grubb; Doug Goeckel; Patrick Davis; Jenny Kupczyk; Mark Drabik; Mike Lucas; Kristi Bolen; Arnie Woelfel, Jr.; Christopher Fasanello; and Timothy Jones.

[10] The Managers are: Alan Heacock; Jason Van Hoof; Don Matchett, Jr.; Brian Reichert; Tanna Wyatt; Nancy McNulty; Tony Jones; Callen Breen; Andy Piepenbrok; Eric Whitley; Pam Bryne; Jeff Joslin; Marino Garcia; and Julie Joyce.

[11] The Directors are: Terri Smith; Robert Jamison, Jr.; Debra Horner; Scott Emmens; Chris Grenfell; Lynnel Anderson; Dori Capretti; Dave Graziano; Deborah Hall; Greg Crouch; Andy Otano; Darren Ostmeyer; Kenneth Herbert; and John Lapelusa.

[12] The senior sales reps are: Jason Cicora; Cynthia Monaco; and Thomas Knight.

{L0257872.8}                                    3

15, 2013. Despite the best efforts of counsel and the Special Masters, a resolution on the number and identity of specific custodial files for sales personnel was not reached. However, the discussions did result in the Defendants' agreement to produce the custodial files of all sales reps. As those individuals' custodial files are the subject of an agreement among the parties, they should no longer be considered in dispute.

In order to avoid replicating effort unnecessarily, the Special Masters settled upon the use of the following procedure for presenting the instant dispute to the Court and described the process during the weekly telephone conference on August 15, 2013:

- We would treat the email request attached hereto as Exhibit A as a request for production of documents;

- We would accept the Defendants' offer contained in Exhibit C (bold entries) to produce 15 custodial files and treat their refusal to produce the remainder of the requested files identified in Exhibit C as an objection on the ground that the requests were overly broad and unduly burdensome;

- We would take into consideration the many discussions of the issues associated with discovery concerning sales personnel during weekly conference calls we conducted since May, 2013;

- We would allow the parties to make written submissions addressing the 28 individuals whose files the Defendants had refused to produce;[13] and

- We would make a formal report and recommendation to the Court as soon as possible.

None of the participating attorneys[14] registered any objection to this process.

## II. *Applicable Law*

Unless otherwise limited by court order, the scope of permissible discovery is as follows:

---

[13] The parties' submissions are included as Exhibits B and C hereto.

[14] The attorneys who participated in the call on August 15, 2013, when this procedure was described, included: lead counsel for the Plaintiffs (Richard Arsenault and Paul Pennock) as well as lead counsel for the Defendants (Sara Gourley).

{L0257872.8} 4

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the ***existence, description, nature, custody, condition and location of any documents or other tangible things*** and the identity and location of persons who know of any discoverable matter.[15]

The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.[16] Nevertheless, discovery does have ultimate and necessary boundaries,[17] and control over discovery is committed to the sound discretion of the trial court.[18]

One form of discovery permitted by the Federal Rules of Civil Procedure is the request for production of documents:

> A party may serve on any other party a request within the scope of Rule 26(b):
>
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>
> (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.[19]
> . . .

---

[15] Fed. R. Civ. Pro. 26(b)(1) (emphasis added).

[16] *See* Crosby v. Louisiana Health Service and Indemnity Company, 647 F.3d 258, 262 (5th Cir. 2011); Henderson v. Turner, 2012 U.S. Dist. LEXIS 158047, *7 (M.D.La. 6/12/2012) (Roby, M.J.), *citing* Herbert v. Lando, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

[17] Henderson, at *7, *citing* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

[18] Henderson, at *7, *citing* Freeman v. United States, 556 F.3d 326, 341 (5th Cir. 2009).

[19] Fed. R. Civ. Pro. 34(a)(1).

When, as in this case, a party's requests clearly fall within the scope of permissible discovery and take a form approved by the Federal Rules of Civil Procedure, a Court is nonetheless under an obligation to limit the extent of discovery under certain circumstances:

> ***When Required.*** On motion or on its own, the court ***must*** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.[20]

### III. The Dispute

Exhibit A reflects the PSC's request for production of the custodial files of 43 individuals who are all either sales representatives, district managers and/or regional sales directors.[21] Of these requested files, the Defendants have agreed to produce the custodial files of 15 individuals.[22] Therefore, the dispute between the parties is limited to the custodial files of the remaining 29 individuals.

---

[20] Fed. R. Civ. Pro. 26(b)(2)(C)(iii) (emphasis added).

[21] The 43 individuals who have custodial files are: Jason Cicora; Cynthia Monaco; Thomas Knight; Terri Smith; Jenna Palka; Alan Heacock; Jason Van Hoof; Don Matchett, Jr.; Robert Jamison, Jr.; Paul Schlicht; Brian Reichert; Debra Horner; Marti Precurato-Grubb; Doug Goeckel; Patrick Davis; Jenny Kupczyk; Scott Emmens; Mark Drabik; Mike Lucas; Tanna Wyatt; Nancy McNulty; Tony Jones; Chris Grenfell; Lynnel Anderson; Dori Capretti; Kristi Bolen; Callen Breen; Andy Piepenbrok; Dave Graziano; Deborah Hall; Greg Crouch; Andy Otano; Arnie Woelfel, Jr.; Eric Whitley; Pam Bryne; Darren Ostmeyer; Jeff Joslin; Kenneth Herbert; Christopher Fasanello; John Lapelusa; Timothy Jones; Marino Garcia; and Julie Joyce.

[22] The Defendants voluntarily are producing (or have produced) the custodial files of: Terri Smith; Jenna Palka; Alan Heacock; Paul Schlicht; Brian Reichert; Marti Precurato-Grubb; Doug Goeckel; Patrick Davis; Jenny Kupczyk; Mark Drabik; Mike Lucas; Kristi Bolen; Arnie Woefel, Jr.; Christopher Fasanello; and Timothy Jones. Information provided to the undersigned indicates that this group consists of all sales reps, together with those individuals whom the Defendants believe would provide the PSC with the most coverage in terms of the length of their employment, the number of people they supervised, and similar issues.

## IV. Analysis

Pursuant to Rules 26(b)(1) and 34(a)(i) of the Federal Rules of Civil Procedure, the document requests posed by the PSC clearly fall within the scope of permissible discovery.[23] The sole basis on which the Defendants seek protection from the obligation to respond in full to the PSC's requests is their alleged over-breadth and unduly burdensome scope. Thus, the decision before the Court is not whether the custodial files of the employees within the remaining three categories might contain relevant information, but whether the number of sales personnel identified by the PSC is too large, unduly burdensome, and should be limited in some respect. Each category of requests will be analyzed in terms of the factors identified in Fed. R. Civ. Pro. 26(b)(2)(C)(iii).

### A. Managers

According to the information that has been provided to us, the Managers were the immediate supervisors of the sales reps who had direct contact with Mr. Allen's physicians. It is most likely that, if the sale reps exchanged any communications relevant to the PSC's inquiry, such communications would have been with their Managers. Thus, the Plaintiffs are justified in their operating assumption that relevant information is likely to be found in the Managers' files. There are twelve (12) individuals who worked for Takeda or Lilly as Managers.

(i) *The needs of the case and the importance of the issues at stake in the action.* Discovery concerning the Managers is important because it is directed to establishing the Defendants' internal communications about its knowledge, as well as the

---

[23] Documents created and held by sales personnel are relevant to demonstrate the Defendants' knowledge, the Defendants' interactions with prescribing physicians, and to the application of the learned intermediary doctrine in this case. Their relevance is demonstrated, in part, by the fact that the Defendants agreed to produce custodial files from current or former employees who served in all three categories, sales representatives, district manager and regional sales director.

{L0257872.8}   7

role that such knowledge played in the Defendants' communications with prescribing physicians. Moreover, information in the files of the Managers has the potential to be relevant to the Plaintiffs' ability to respond to what is expected to be a central affirmative defense at trial: the learned intermediary doctrine. These issues are central to the PSC's case. Because the discovery is not directed at a marginal issue, these two factors weigh in favor of allowing the discovery.

*(ii)* ***The amount in controversy.*** Estimates of the amount in controversy in this case vary a great deal, but it is clear that the value of both the Plaintiffs' claims and the group of claims being prosecuted by the PSC is large enough to justify the discovery at issue. This factor weighs in favor of allowing the discovery.

*(iii)* ***The parties' resources.*** The financial and personnel resources available to the Defendants appear to be sufficient to allow them to respond to the PSC's requests for production. The Defendants have produced neither evidence nor argument suggesting the contrary. This factor weighs in favor of allowing the discovery.

*(iv)* ***The importance of this discovery in resolving the issues.*** According to the PSC, the sales reps stopped taking call notes in 2006. As a result, the Plaintiffs' ability to ascertain what the sales reps knew, when they knew it, who they told, and what was told, is limited after that date. The Managers' custodial files (in light of their role as the sales reps' immediate supervisors) are most likely to provide the best alternative source of knowledge about the information available to the sales reps and the information that was being transmitted to Mr. Allen's physicians.

Given the relatively small number of files in this category, the Managers' role vis-à-vis the sales reps, and the factors discussed above, the burden and expense associated with

{L0257872.8} 8

producing these files is not likely to outweigh the benefit to the PSC of obtaining this information. For these reasons, the custodial files of the entire group of Managers should be ordered produced to the PSC. The Managers at issue are: Jason Van Hoof, Don Matchett, Jr., Tanna Wyatt, Nancy McNulty, Tony Jones, Callen Breen, Andy Piepenbrok, Eric Whitley, Pam Bryne, Jeff Joslin, Marino Garcia, and Julie Joyce.

### B.    *Senior Sales Reps*

The second group of individuals whose custodial files the PSC seeks are the senior sales reps, *i.e.*, three individuals who are known (or believed by the PSC) to have had discussions with one or more sales reps concerning alleged side effects of Actos®, including bladder cancer and cardiovascular issues. Thus, by contrast with the other groups of individuals (whose files are requested based solely on their presence in the hierarchy of sales personnel who had contact with Mr. Allen's physicians), this category involves individuals who have been identified based upon information in the possession of the PSC that has created a specific and direct suspicion that they will or might have information relevant to the Plaintiffs' case.

*(i)    The needs of the case, the importance of the issues at stake in the action and the importance of this discovery in resolving the issues.* This discovery is addressed to obtaining the files of three individuals who are believed to have knowledge of side effects allegedly caused by Actos®, to have information about how the Defendants treated this knowledge, and to have information about how (if at all) the Defendants communicated this knowledge to prescribing physicians. These issues are central to the Plaintiffs' failure to warn claims. Because the discovery is not directed at a marginal issue, all three of these factors weigh in favor of allowing the discovery.

   *(ii)* ***The amount in controversy.*** Estimates of the amount in controversy in this case vary a great deal, but it is clear that the value of both the Plaintiffs' claims and the larger group of claims being prosecuted by the PSC are large enough to justify the discovery at issue. This factor weighs in favor of allowing the discovery.

   *(iii)* ***The parties' resources.*** The financial and personnel resources available to the Defendants appear to be sufficient to allow them to respond to the PSC's requests for production. The Defendants have produced neither evidence nor argument suggesting the contrary. This factor weighs in favor of allowing the discovery.

Given the small number of files in this category and the fact that the PSC is already in possession of information leading them to believe that these individuals were in possession of information relevant to proving the knowledge of the Defendants and their communications with prescribing physicians, together with the factors discussed above, the burden and expense associated with producing these files is not likely to outweigh the benefit to the PSC of obtaining this information. For these reasons, the custodial files of the entire group of senior sales reps should be ordered produced to the PSC. The senior sales reps at issue are: Jason Cicora, Cynthia Monaco, and Thomas Knight.

  **C.** ***Directors***

 For the most part, the balancing factors identified in Rule 26(b)(2)(C)(iii) carry the same weight with regard to the Directors as they do with the Managers and senior sales reps discussed above. The needs of the case and the importance of the issues at stake in these proceedings make it essential that the PSC be permitted to discover evidence concerning the Defendants' knowledge and how, if at all, that knowledge was conveyed to Mr. Allen's physicians.

Similarly, both the amount in controversy analysis and consideration of the parties' resources weigh in favor of allowing discovery concerning the Directors.

However, it is in considering the importance of these particular custodial files that the balance shifts somewhat for this category of individuals, especially if the Court accepts our recommendation that the Managers' files and the senior sales reps' files be ordered produced. This is so because: (a) the Directors were not the sales reps' immediate supervisors and, therefore, it is not reasonable to believe that there would have been very much direct communication between the Directors and the sales reps; (b) the PSC now has (and will have additional) sources of information about how the Directors were directing their sales personnel to interact with physicians (specifically, it is reasonable to expect that the PSC will discover such information in either the sales reps' files or the Managers' files that we are recommending be ordered produced); and (c) we will recommend that if, during the course of discovery, the PSC receives information suggesting that any Director whose custodial file is not produced contains documents or other information of relevance to their case, they will have grounds for a good cause showing and will be free to seek the production of such file. While these factors do not weigh in favor of a global ruling that no Director files should be produced – after all, the PSC has already discovered relevant evidence in one or more of the Directors' files – they do counsel against any form of global ruling at all. Instead of recommending a global approach to this group of custodial files, we have conducted an analysis of each of the Directors to determine the likelihood of their files containing unique, relevant information and to make recommendations based on the specific facts regarding each individual custodian.

With regard to all Directors whose files are in dispute, we have evaluated the time period during which each Director served in that capacity (which weighs in favor of production, if the

time period either preceded or overlapped with Mr. Allen's prescriptions); whether each Director supervised any sales rep who visited Mr. Allen's physicians prior to or during the time that he was prescribed Actos®; whether each Director served in that capacity for a substantial period of time (for instance, serving in that role for less than a year weighs against any presumption that the Director had a substantial impact on subordinates two levels below); and any other factor that sheds light on the likelihood that the Director's file will contain unique, relevant evidence.

*(i)* *Robert Jamison, Jr.* Mr. Jamison served as Director for approximately 1½ years during the time that Mr. Allen's physicians were being visited by two of the Defendants' sales reps. His custodial file should be produced.

*(ii)* *Debra Horner.* Ms. Horner served as Director for approximately 1½ years during the time that Mr. Allen's physicians were being visited by one of the Defendants' sales reps. Her custodial file should be produced.

*(iii)* *Scott Emmens.* Mr. Emmens served as Director for approximately two (2) years, all prior to the time that Mr. Allen's physicians began prescribing Actos® to him. He supervised five (5) sales reps who visited Mr. Allen's physicians. His custodial file should be produced.

*(iv)* *Chris Grenfell.* Mr. Grenfell spent only eight (8) months as Director. His custodial file should not be ordered produced at this time.

*(v)* *Lynnel Anderson.* Ms. Anderson served as Director for 11 months, all prior to the time that Mr. Allen's physicians began prescribing Actos® to him. She supervised two (2) sales reps who visited Mr. Allen's physicians. Her custodial file should be produced.

*(vi)* **Dori Capretti.** Ms. Capretti spent only six (6) months as Director. Her custodial file should not be ordered produced at this time.

*(vii)* **Dave Graziano.** Mr. Graziano served as Director for 13 months, very early in the period of time during which Actos® has been sold (June, 1999 through July, 2000). He did not supervise any sales reps who visited any of Mr. Allen's physicians. His file should not be ordered produced at this time.

*(viii)* **Deborah Hall.** Ms. Hall served as Director for nine (9) months and did not supervise any sales rep who visited Mr. Allen's physicians. Her file should not be ordered produced at this time.

*(ix)* **Greg Crouch.** Mr. Crouch served as Director for 1½ years, all of which occurred prior to the period of time during which Mr. Allen's physicians were prescribing Actos® to him. He supervised one sales rep who visited Mr. Allen's physicians during the time that he was prescribed Actos®. His file should be ordered produced.

*(x)* **Andy Otano.** Mr. Otano served as Director for seven (7) months. His file should not be ordered produced at this time.

*(xi)* **Darren Ostmeyer.** Mr. Ostmeyer served as Director for approximately 1½ years, all prior to the time during which Mr. Allen was prescribed Actos®. He supervised two sales reps who visited Mr. Allen's physicians, one of whom visited those physicians during time frame in which Mr. Allen was being prescribed Actos®. His file should be ordered produced.

*(xii)* **Kenneth Herbert.** Mr. Herbert served as Director for approximately 2½ years, all prior to the time during which Mr. Allen was prescribed Actos®. He supervised two sales reps who visited Mr. Allen's physicians, one of whom visited those

physicians during the time frame in which Mr. Allen was being prescribed Actos®. His file should be ordered produced.

*(xiii)* ***John Lapelusa.*** Mr. Lapelusa served as Director for an undetermined amount of time (the Defendants have not provided either the PSC or the Court with his employment dates), but he appears to have served in this capacity prior to Mr. Allen's physicians began prescribing Actos® to him. He supervised one sales rep who visited Mr. Allen's physicians prior to the time when they began prescribing Actos® to him. His file should be produced.

For the foregoing reasons, the custodial files of Robert Jamison, Jr., Debra Horner, Scott Emmens, Lynnel Anderson, Greg Crouch, Darren Ostmeyer, Kenneth Herbert, and John Lapelusa should be ordered produced. The remaining files (*i.e.,* those of Chris Grenfell, Dori Capretti, Dave Graziano, Deborah Hall, and Andy Otano) should not be ordered produced at this time. Furthermore, we recommend that the Court make clear that the Plaintiffs may, for good cause shown, petition for production of the custodial files that are not being ordered produced at this time if, during the course of discovery and/or review of other custodial files, individualized information is developed that suggests unique, relevant information might be found in those files.

## V.   *Appeal Delays*

In light of the fact that we are approaching the end of the discovery period, we encourage the Court to shorten appeal deadlines, in order to provide meaningful review of this dispute in a time frame that will preserve the parties' rights.

## RECOMMENDATIONS

For the foregoing reasons:

A.  We recommend that the Court issue an order granting the PSC's request to obtain the custodial files of the following sales personnel:

- all personnel as to whom the parties reached agreement independently;
- all Managers requested;
- all senior sales reps requested;
- Directors Jamison, Horner, Emmens, Anderson, Crouch, Ostmeyer, Herbert, and Lapelusa.

B.  We further recommend that the Court enter an order shortening the length of time within which any aggrieved party may enter objections to the instant Report and Recommendation.

Pursuant to Fed. R. Civ. Pro. 53 and the Order Appointing Special Masters entered by this Court on April 11, 2012,[24] any party aggrieved by this recommendation has 14 days from service of this Report and Recommendation (***unless an order shortening this time is entered***) to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within 14 days after being served with of a copy of any objections or responses to the Court at the time of filing.

Pursuant to the Order Appointing Special Masters, the failure to file written objections to the proposed factual findings, the proposed legal conclusions, and the analysis reflected in the instant Report and Recommendation shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of

---

[24] Rec. Doc. 48.

plain error. *See, e.g.,* Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted,

*/s/ Gary J. Russo*

Gary J. Russo, Esq., Special Master
JONES WALKER, LLP
600 Jefferson Street, Suite 1600
Lafayette, Louisiana 70501
Telephone: 337.593.7600
Facsimile: 337.593.7601
grusso@joneswalker.com

*/s/ Carmen M. Rodriguez*

Carmen M. Rodriguez, Esq., Deputy Special Master
JONES WALKER, LLP
600 Jefferson Street, Suite 1600
Lafayette, Louisiana 70501
Telephone: 337.593.7600
Facsimile: 337.593.7601
carmenrodriguez@joneswalker.com